UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 2805 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ILLINOIS BELL TELEPHONE CO. d/b/a AT&T ILLINOIS, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Charles Scott and 140 other plaintiffs jointly sued their employer, Illinois Bell Telephone Company, alleging that it shortchanged them on overtime pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Doc. 8 at ¶ 4; Doc. 19 at 3-4. Chief Judge Castillo severed the plaintiffs' claims under Federal Rule of Civil Procedure 21, and Scott's suit was assigned to the undersigned judge's calendar. Doc. 2; Doc. 8 at ¶ 4. Scott then filed an amended complaint, alleging that Illinois Bell, when calculating his wages, routinely ignored time that he spent working before and after his official shifts and during lunch breaks. Doc. 8 at ¶¶ 9-41. Illinois Bell has moved to dismiss parts of the amended complaint under Rule 12(b)(6). Doc. 18. The motion is granted; Scott's claims based on pre-shift work, and those based on certain lunch break and post-shift work, are dismissed with prejudice to the extent that work was performed before February 28, 2011.

**Background**

In deciding the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). The court must consider "documents attached to the

1

[amended] complaint, documents that are critical to the [amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Scott's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015). The following facts are set forth as favorably to Scott as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

From at least July 27, 2008, Scott worked for Illinois Bell as a Cable Splicer. Doc. 8 at ¶¶ 6, 9. Scott's workweek officially lasted forty hours, but in practice Illinois Bell required him to perform work-related tasks before and after his official shift and during his lunch break. *Id.* at ¶¶ 36, 38-39. Specifically, Scott had to show up before his shift began to stock and fuel his truck and to review blueprints for the day's jobs, *id.* at ¶ 45; he often had to work through lunch to meet his supervisor's efficiency expectations, *id.* at ¶¶ 23, 47; and he typically spent time after his shift cleaning out and restocking his truck, removing generators and tanks from his truck, and occasionally completing timesheets, *id.* at ¶ 46. Illinois Bell nonetheless paid Scott as if he had worked only during his assigned eight-hour shift. *Id.* at ¶¶ 38, 40.

On January 17, 2011, other Illinois Bell employees sued Illinois Bell under the caption, *Blakes v. AT&T Corp.*, 11 C 336 (N.D. Ill.), alleging that the company violated the FLSA by requiring Cable Splicers to guard open manholes during their lunch breaks, to travel between job sites during their lunch breaks, and to complete timesheets after their shifts, all without pay. Doc. 8 at ¶¶ 2-3; Amended Complaint, *Blakes*, 11 C 336 (Doc. 11). Section 16(b) of the FLSA, 29 U.S.C. § 216(b), allows workers to bring claims as "collective actions," which operate much like class actions under Rule 23 except that "plaintiffs who wish to be included in a collective

action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Magistrate Judge Kim, who was hearing *Blakes*, conditionally certified three claims for collective treatment under § 216(b): (1) claims based on time spent guarding open manholes during lunch breaks; (2) claims based on time spent travelling between job sites during lunch breaks; and (3) claims based on time spent completing timesheets after shifts had ended. *Blakes v. Ill. Bell Tel. Co.*, 2011 WL 2446598, at *3-4 (N.D. Ill. June 15, 2011). Those three claims will be called the "*Blakes* claims." Scott opted into the *Blakes* collective action on July 27, 2011. Doc. 8 at ¶ 3.

On December 17, 2013, Magistrate Judge Kim decertified the *Blakes* collective action with respect to both lunch break claims, but not the post-shift claim, and stayed his ruling until February 28, 2014. Doc. 19 at 3; *see Blakes v. Ill. Bell Tel. Co.*, 2013 WL 6662831, at *21 (N.D. Ill. Dec. 17, 2013). On the last day of the stay, rather than seeking leave to file an amended complaint in *Blakes* joining themselves as plaintiffs under Rule 20(a)(1), Scott and 140 others who had opted into *Blakes* jointly filed a new complaint against Illinois Bell in *Tinoco v. Illinois Bell Telephone Co.*, 14 C 1456 (N.D. Ill.), as co-plaintiffs rather than as a collective action. Doc. 8 at ¶ 4; Doc. 19 at 3-4. *Tinoco* was assigned to Chief Judge Castillo, and the court issued summons on May 1, 2014. *See* Docket Sheet, *Tinoco*, 14 C 1456.

Chief Judge Castillo ultimately held that a non-collective action suit joining the individual FLSA claims of 141 different plaintiffs would be too unruly, so he severed the plaintiffs' claims, which the Clerk then distributed to judges throughout the District. *See Adkins v. Ill. Bell. Tel. Co.*, 2015 WL 1508496, at *9-10 (N.D. Ill. Mar. 24, 2015). Scott's present suit, one of the severed *Tinoco* actions, was assigned to the undersigned judge's calendar. Doc. 2.

Scott filed an amended complaint setting out his personal allegations against Illinois Bell on July 30, 2015.  Doc. 8.  He seeks to recover for all of his unpaid work dating back to July 27, 2008—exactly three years before he opted into the *Blakes* collective action.  *Id*. at ¶ 3.  His suit includes not only the *Blakes* claims—which, as noted, relate to guarding job sites and travelling during lunch, and completing timesheets after his shift—but also claims for unpaid time spent preparing for the day's jobs before his shift, working to meet Illinois Bell's efficiency expectations during lunch, and performing various tasks after his shift.  *Id*. at ¶¶ 45-47.  Those other claims will be called the "non-*Blakes* claims."

## Discussion

Illinois Bell has moved to dismiss Scott's non-*Blakes* claims, insofar as they pertain to work he performed before February 28, 2011, on the ground that they are barred by the FLSA's three-year statute of limitations for willful violations, 29 U.S.C. § 255(a).  Doc. 19 at 5.  Illinois Bell concedes that Scott's amended complaint relates back to the original complaint in *Tinoco* filed on February 28, 2014, and therefore that all claims based on work that Scott performed on or after February 28, 2011 are at least plausibly timely.  Doc. 19 at 5.  Illinois Bell also concedes for purposes of its motion that Scott's *Blakes* claims are timely to the extent they are based on work performed on or after July 27, 2008, which is three years before he opted into the *Blakes* collective action on July 27, 2011.  *Id*. at 5-6.  But Illinois Bell contends that Scott's non-*Blakes* claims are time-barred to the extent they are based on work performed before February 28, 2011.  *Ibid*.  Scott counters that, under Rule 15(c)(1)(B), his amended complaint relates back to the day he opted into *Blakes*, July 27, 2011, and therefore that *all* of his claims, including his non-*Blakes* claims, are timely insofar as they relate to work performed after July 27, 2008.  Doc. 22 at 3-4.

Judges in this District handling severed *Tinoco* suits have split over whether non-*Blakes* claims relate back under Rule 15(c)(1)(B) to the date the plaintiff opted into *Blakes*. Some decisions hold that Rule 15(c)(1)(B) applies. *See*, *e.g.*, *Pavur v. Ill. Bell Tel. Co.*, 2016 WL 278886, at *3 (N.D. Ill. Jan. 21, 2016); *McComb v. Ill. Bell Tel. Co.*, 2016 WL 245900, at *2 (N.D. Ill. Jan. 20, 2016); *McNally v. Ill. Bell Tel. Co.*, 2016 WL 212942, at *3-4 (N.D. Ill. Jan. 19, 2016); *Miller v. Ill. Bell. Tel. Co.*, __ F. Supp. 3d __, 2016 WL 212940, at *3-4 (N.D. Ill. Jan. 19, 2016); *Brown v. Ill. Bell Tel. Co.*, 2016 WL 212939, at *3 (N.D. Ill. Jan. 19, 2016); *Hodges v. Ill. Bell Tel. Co.*, 2015 WL 6407757, at *3 (N.D. Ill. Oct. 21, 2015); *Ballard v. Ill. Bell Tel. Co.*, 2015 WL 6407574, at *3 (N.D. Ill. Oct. 21, 2015) ("Because this is the same lawsuit stemming from the *Blakes* Action, the Court turns to the relation back doctrine under Rule 15(c)(1)(B)."). Other decisions hold that it does not matter whether Rule 15(c)(1)(B) applies, because Rule 15(c)(1)(B) is identical in scope to a tolling doctrine (*American Pipe*, of which more later) that does apply. *See*, *e.g.*, *Niemiec v. Ill. Bell Tel. Co.*, 2016 WL 521060, at *2-3 (N.D. Ill. Feb. 10, 2016); *Tennessen v. Ill. Bell Tel. Co.*, 2016 WL 521046, at *2-3 (N.D. Ill. Feb. 10, 2016); *Jones v. Ill. Bell Tel. Co.*, 2015 WL 9268418, at *2-3 (N.D. Ill. Dec. 21, 2015); *Alphonse v. Ill. Bell Tel. Co.*, 2015 WL 7251953, at *1 (N.D. Ill. Nov. 17, 2015); *Wiggins v. Ill. Bell Tel. Co.*, 2015 WL 6408122, at *4-6 (N.D. Ill. Oct. 22, 2015). Still other decisions suggest that Rule 15(c) does *not* apply. *See Passi v. Ill. Bell Tel. Co.*, 2016 WL 193401, at *4 (N.D. Ill. Jan. 15, 2016); *Malkowski v. Ill. Bell Tel. Co.*, 2016 WL 193399, at *4 (N.D. Ill. Jan. 15, 2016); *Bowen v. Ill. Bell Tel. Co.*, 2016 WL 164415, at *4 (N.D. Ill. Jan. 14, 2016) ("The court also notes that even if the instant action could be construed as a continuation of the same case in *Blakes* and Bowen seeks to have his complaint in this case relate back to the complaint in *Blakes* pursuant to Federal Rule of Civil Procedure 15(c)(1), it would only apply to the same FLSA

claims asserted in *Blakes*, not to the additional conduct that has been introduced in this case which Bell received no notice of in *Blakes*."). The court agrees with the last set of decisions, and in support offers the following explanation for why Rule 15(c) does not apply.

Rule 15(c) provides that some amended pleadings "relate back" to the filing dates of earlier pleadings for the purposes of statutes of limitations. It reads, in relevant part:

> (c) Relation Back of Amendments.
>
> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when: …
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading ….

Fed. R. Civ. P. 15(c)(1)(B).

The problem with Scott's invocation of Rule 15(c)(1)(B) is that "Rule 15(c), by its terms, only applies to amended pleadings *in the same action as the original, timely pleading.*" *Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990) (emphasis added); *see also Henderson v. Bolanda*, 253 F.3d 928, 932 (7th Cir. 2001) (citing *Bailey* with approval); *Velez-Diaz v. United States*, 507 F.3d 717, 719 (1st Cir. 2007) ("Rule 15(c), by its terms, applies to amended pleadings in the *same* action as an original, timely pleading: the pleading sought to be amended may not be a pleading filed in a different case."); *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1066 (9th Cir. 2006) ("O'Donnell's second complaint does not 'relate back' to her first complaint because her second complaint was not an 'amendment' to her first complaint, but rather a separate filing."); *Carter v. Tex. Dep't of Health*, 119 F. App'x 577, 581 (5th Cir. 2004); *United States ex rel. Malloy v. Telephonics Corp.*, 68 F. App'x 270, 273 (3d Cir. 2003) ("We agree that Rule 15(c) does not permit a complaint filed in one civil action to relate back to a complaint filed in a separate civil action.") (internal quotation marks omitted); *Neverson v.*

*Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001) ("Rule 15(c) simply does not apply where, as here, the party bringing suit did not seek to 'amend' or 'supplement' his original pleading, but, rather, opted to file an entirely new petition at a subsequent date."); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989) ("Rule 15(c) concerns amendments to pleadings. Its plain language makes clear that it applies not to the filing of a new complaint, but to the filing of an amendment …."). *Blakes*, however, is a different action from *Tinoco* and the present suit. The complaint in *Tinoco*, to which Scott's amended complaint indisputably relates back, was not an amendment in *Blakes*, but rather the initial filing in a new suit. The *Tinoco* plaintiffs did not seek the *Blakes* court's leave under Rule 15(a)(2) to file an amended complaint before initiating the *Tinoco* suit. They instead filed a new complaint in a way that caused it to be assigned a different judge (Chief Judge Castillo, not Magistrate Judge Kim) and docket number (14 C 1456, not 11 C 336). *See Window World of Chicagoland, LLC v. Window World, Inc.*, 811 F.3d 900, 903 (7th Cir. 2016) (holding that two related and administratively consolidated suits were distinct actions in part "because they still carr[ied] separate docket numbers"). And the *Tinoco* plaintiffs caused the court to issue a new summons to Illinois Bell—a required step under Rule 4(c)(1) for service of the initial complaint in a new lawsuit, but not (with a few inapplicable exceptions) under Rule 5(a)(1)(B) for service of an amended complaint in an existing lawsuit. *See Broadwater v. Kalina*, 2013 WL 3353946, at *2 (S.D. Ind. July 3, 2013) ("Because defendants … had already waived service of the *First Amended Complaint* and entered appearances by counsel, service of process of the Second Amended Complaint under Rule 4 was not required on them; instead, what was required was that their attorneys receive ordinary service of copies of the new complaint pursuant to Rule 5(a)(1)(B) and (b)(1).") (citations omitted); *Naylor v. Streamwood Behavioral Health Sys.*, 2012 WL 5499441, at *6 (N.D. Ill. Nov. 13,

7

2012) (noting that Rule 5 allows plaintiffs to serve "pleadings filed after the initial complaint," but not "the original complaint and summons," directly on opposing counsel); 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1146, at 457-62 (4th ed. 2015). So, because neither the *Tinoco* complaint nor Scott's amended complaint is an "amendment to" any pleading in *Blakes*, Scott's amended complaint does not under Rule 15(c) relate back to his initial filing in *Blakes*. *See Velez-Diaz*, 507 F.3d at 719 (holding that a second complaint instituted a new action and therefore could not relate back to the complaint in an earlier suit because the second complaint "did not purport to be an amendment to the" first complaint); *O'Donnell*, 465 F.3d at 1066 (holding that the plaintiff's second complaint, which she filed after her first complaint was dismissed for failure to prosecute, was a "separate filing" rather than an "amendment to her first complaint," and therefore that it could not relate back to the first complaint) (internal quotation marks omitted).

For purposes of Rule 15(c)(1), it does not matter that the claims in *Tinoco* and this suit are related to the claims in *Blakes*, or that the *Tinoco* plaintiffs filed their complaint before they had finished participating in *Blakes* with respect to the lunch break claims. Both circumstances prevailed with the complaints in *Bailey v. Northern Indiana Public Service Co.*, *supra*, but the Seventh Circuit nevertheless held that the second complaint was not an amendment of the first. The plaintiff in *Bailey* filed two suits against his employer—the first alleging that his supervisors continuously harassed him for being black, and the second alleging that his supervisors sabotaged his performance on a test because he was black, causing him to lose a promotion. 910 F.2d at 407-08. The second suit was filed before the first had finished, and in fact the two suits were partially tried together. *Id*. at 409. Even so, and despite the similarities between the allegations in the two complaints, the Seventh Circuit rejected the plaintiff's argument that the

8

second complaint related back to the first complaint's filing date under Rule 15(c); it explained that, "[b]ecause the [testing] claim was not contained in an amended pleading in Suit 1 but in a second, separate complaint, Rule 15(c) [was] inapplicable." *Id*. at 413 (footnote omitted). As a result, the Seventh Circuit held that the testing claim was partially time-barred. *Id*. at 412-13; *see also Morgan*, 868 F.2d at 994 (holding that one complaint, alleging one breach of a franchise agreement, and another complaint, alleging a related breach of the same agreement, created different actions for purposes of Rule 15(c)).

This result might appear at first blush to rest on empty formalism, but the distinction between an amended complaint in one suit and a complaint filed to institute a second suit is substantive, not formal. Rule 15(a) provides that, other than one amendment as a matter of course within certain limited time frames, *see* Fed. R. Civ. P. 15(a)(1), a plaintiff may file an amended complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although "court[s] should freely give leave [to amend] when justice so requires," *ibid*., they are not a rubber stamp, for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" can justify denying leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see*, *e.g.*, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808-09 (7th Cir. 2015) (affirming the denial of leave to amend); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 759 (7th Cir. 2002) (same); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775-76 (7th Cir. 1995) (same).

Scott's approach would improperly allow plaintiffs to benefit from liberal relation back under Rule 15(c) while shielding them from the Rule 15(a)(2)'s leave-of-the-court requirement. Scott's own situation illustrates the point. After decertifying the two lunch break claims in

9

*Blakes*, Magistrate Judge Kim denied the named plaintiffs' motion for leave to amend to add claims based on "pre-shift work, post-shift work unrelated to timesheets, efficiency pressures, or [Illinois Bell's efficiency measurement system]"—claims that overlap with Scott's non-*Blakes* claims—reasoning that the request came too late considering that the plaintiffs knew about the additional claims' factual predicates from the beginning of the litigation. *Blakes v. Ill. Bell Tel. Co.*, 75 F. Supp. 3d 792, 803-04 (N.D. Ill. 2014). Scott managed to avoid the effects of that ruling by starting a new suit in *Tinoco*. But it would be perverse, and would undermine Rule 15(a)(2) and Magistrate Judge Kim's ruling thereunder, if Scott could now take advantage of a filing date in *Blakes* for statute of limitations purposes by insisting that *Tinoco* was an extension of *Blakes* all along.

Several precedents dealing with seemingly formal yet legally significant distinctions show that such distinctions must be respected. For example: A plaintiff benefits from the date an earlier complaint was filed if the court severed his claim from that complaint, but not if the court dismissed his claim without prejudice, after which he filed a new complaint, *see Elmore v. Henderson*, 227 F.3d 1009, 1010-11 (7th Cir. 2000); a plaintiff in a multidistrict litigation whose individual suit was "merg[ed]" into a "master complaint" cannot immediately appeal if only her claims are dismissed, but she can immediately appeal if the multidistrict litigation is not subject to a master complaint, *see Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904-05 & n.3 (2015); a decision in one case can have a preclusive effect on a related case if the two have been administratively consolidated under Rule 42(a)(1) or (3), but not if they have been fully consolidated under Rule 42(a)(2), *see Window World*, 811 F.3d at 903; and a consent decree with the government in a Clean Water Act suit can have a preclusive effect on further litigation by private parties who have filed separate suits, but not on litigation by those who have intervened

in the government's suit, *see United States v. Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d 821, 824 (7th Cir. 2015). In other words, the seemingly formal lines that separate one action from another have enforceable legal consequences. Why should the line between an amended complaint in one suit and a complaint initiating a second suit be any different?

It is no answer to say that this reading of Rule 15(c)(1)(B) leaves plaintiffs like Scott without recourse, for opt-in members of decertified collective actions almost certainly benefit from what is known as *American Pipe* tolling, after *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974). *American Pipe* holds that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id*. at 554 (footnote omitted); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352-53 (1983); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 561 (7th Cir. 2011). While neither party has cited an appellate decision extending *American Pipe* to collective actions under the FLSA, it is a natural step. *American Pipe* tolling exists to prevent "needless duplication" of litigation. *American Pipe*, 414 U.S. at 554. If a person stands to recover in a putative class action but worries that her individual claim will be time-barred if the court eventually decides not to certify a class or to decertify a certified class, she might file an individual suit just to cover her bases. *American Pipe* tolling allays that worry, and therefore dissuades absentee plaintiffs from filing protective suits. *See Chardon v. Fumero Soto*, 462 U.S. 650, 659 (1983); *American Pipe*, 414 U.S. at 553-54. That reasoning applies with equal force to collective actions. A rule encouraging FLSA opt-in plaintiffs to file separate, protective suits would defeat the efficiencies that collective actions exist to harness. *See Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010) (noting that a collective action, even with subclasses, could be a more efficient form

11

of litigation than individual suits). *American Pipe* therefore mitigates whatever harsh effects might follow from the court's reading of Rule 15(c)(1)(B).

Accordingly, Scott's complaint does not relate back under Rule 15(c)(1)(B) to any filing in *Blakes*. There is a separate question whether *American Pipe* tolled the statute of limitations on any of Scott's claims between July 27, 2011, when Scott opted into the *Blakes* collective action, and February 28, 2014, when the *Blakes* court decertified the two *Blakes* lunch claims. Illinois Bell concedes that the *Blakes* action tolled the limitations period on Scott's *Blakes* claims to the extent those claims are based on pre-February 28, 2011 work, but argues that *Blakes* did not toll the limitations period on his non-*Blakes* claims. Doc. 19 at 5-6. For his part, Scott does not argue that any of his claims enjoyed *American Pipe* tolling while he was a member of *Blakes*; in fact, he argues that *American Pipe* tolling does *not* apply here. Doc. 22 at 2 ("Federal Rule of Civil Procedure 15(c)(1)(B), rather than tolling principles, govern [sic] Plaintiff's amendment of his complaint.") (capitalization altered). Scott therefore has waived any contention that the *Blakes* action tolled the statute of limitations on his claims. *See United States v. Driver*, 242 F.3d 767, 770 (7th Cir. 2001) ("When the court does exactly what [a party] wants, [that party] has waived rather than simply forfeited any argument that things should have been done otherwise.").

Scott's waiver aside, Illinois Bell is correct that *American Pipe* tolling does not apply to his non-*Blakes* claims. As the Supreme Court explained in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975), *American Pipe* applies only when the earlier class suit "involve[s] exactly the same cause of action subsequently asserted." *Id*. at 467. And as the Seventh Circuit held in *In re Copper Antitrust Litigation*, 436 F.3d 782 (7th Cir. 2006), *American Pipe* does not apply when the class claim and subsequent individual claim turn on the same factual allegations

12

but assert different legal theories. *Id*. at 794 (holding that a class suit in state court alleging violations of state antitrust law did not toll the limitations period for a later-filed suit for violations of federal antitrust law based on the same alleged misconduct); *see also Sawyer*, 642 F.3d at 562 ("[T]he point of [*Copper Antitrust*] … was not that a change of forum was dispositive; it was that state and federal antitrust laws differ."); *Williams v. Boeing Co.*, 517 F.3d 1120, 1135-36 (9th Cir. 2008) (holding that *American Pipe* did not apply because the class suit alleged that the defendant violated 42 U.S.C. § 1981 with discriminatory failures to promote and a hostile work environment, while the later individual suit alleged that the defendant violated § 1981 by compensating black workers differently); *Spann v. Cmty. Bank of N. Va.*, 2004 WL 691785, at *5-6 (N.D. Ill. Mar. 30, 2004) (holding that the statute of limitations on an individual claim under the Truth in Lending Act ("TILA") was not tolled by a class suit that alleged violations of state law, not TILA); *Stutz v. Minn. Mining Mfg. Co.*, 947 F. Supp. 399, 404 n.2 (S.D. Ind. 1996) ("For the legal fiction of tolling to be equitable to the defendant, the claims in both the class action and the individual action must be identical.").[*]

---

[*] A different, more lenient standard governs relation back under Rule 15(c). Amended claims relate back to earlier pleadings as long as they "ar[i]se out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This means that, unlike with *American Pipe* tolling, an amendment can relate back even if it changes the legal theory premising the defendant's liability. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006) (explaining, of "materially identical" state law on relation back, that "there would be relation back if the two complaints referred to the same general set of facts though the amended one alleged a different cause of action and legal theory from the original complaint") (internal quotation marks omitted); *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996) ("In general, relation back is permitted under Rule [15(c)(1)(B)] where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading."); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410-11 (7th Cir. 1989) (holding that federal employment discrimination claims related back to a complaint bringing state employment discrimination claims based on the same conduct because "the same substantive legal theory need not be alleged in both complaints").

This understanding of *American Pipe* tolling best comports with the doctrine's rationale. As the Eighth Circuit recently explained:

> A broader rule would not enhance the "efficiency and economy" of Rule 23 class actions. The Supreme Court's concern was that without tolling, putative class members would needlessly bring motions to intervene or a multiplicity of actions raising identical claims. But where a putative class member wishes to pursue a claim *that is outside the scope of the class action*, his separate timely lawsuit is not "needless," because the class action would not prosecute his different claim.

*Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015) (emphasis added, citations omitted). That is exactly what happened here. The lead plaintiffs in *Blakes* sued for pay for time

---

It is on this point that the undersigned respectfully parts company with the rationale of the decisions holding that it does not matter whether Rule 15(c)(1)(B) applies to the severed *Tinoco* suits. Those decisions posit that *American Pipe* tolling uses the same, lenient standard as Rule 15(c). *See*, *e.g.*, *Jones*, 2015 WL 9268418, at *2 ("Given that the main concern is notice to the defendant, it makes sense that this [*American Pipe*] standard should be similar to the rule governing relation-back of amendments to a complaint."); *Alphonse*, 2015 WL 7251953, at *1 ("Whether viewed through the lens of Rule 15 relation-back doctrine or through the tolling principles governing Rule 23 actions, the inquiry is functionally the same: Was defendant sufficiently on notice of plaintiff's claim?"); *Wiggins*, 2015 WL 6408122, at *4-6. In fairness, that position finds support in decisions in the Second and Ninth Circuits. *See Cullen v. Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987) (holding that *American Pipe* tolling, like relation back under Rule 15(c), applies whenever the later-filed claims "involve the same evidence, memories, and witnesses as were involved in the initial putative class action," regardless of "the differences between the legal theories advanced" in the two actions), *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled."); *see also In re Cmty. Bank of N. Va.*, 622 F.3d 275, 299-300 (3d Cir. 2010) (describing the circuit split and collecting cases); *but see Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015) (rejecting the contention that "*American Pipe* tolling should apply because the [individual claims], although different causes of action, were based on the same factual information that underlay the class action complaint"); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003) ("As we explained *supra*, however, a wrongful death action under Florida law is different in kind from any action based on a defective product. Because of this difference, a class action asserting primarily product liability claims would not include wrongful death claims unless wrongful death claims were explicitly included in the class action."). But this court must follow the dictates of the Seventh Circuit, not the Second or the Ninth. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("A district court in Wisconsin must follow [the Seventh Circuit's] decisions, but it owes no more than respectful consideration to the views of other circuits.").

they spent guarding manholes during lunch, travelling between job sites during lunch, and completing timesheets after shifts—the *Blakes* claims. If Scott wanted to recover only for the *Blakes* claims, it would have been a waste for him to file his own separate suit while the *Blakes* collective action was pending, and so it makes sense that the collective action would toll the statute of limitations for those specific claims. But Scott also wants to recover for non-*Blakes* claims—time he spent preparing for work before his shift, time he spent doing work during lunch other than guarding manholes and driving between jobs, and time he spent doing work after his shift other than completing timesheets. He could not reasonably have expected for the *Blakes* collective action to satisfy those interests, so it would *not* have been a waste for him to file an individual suit stating those claims. Tolling is therefore inappropriate for those claims.

## Conclusion

Illinois Bell's partial motion to dismiss is granted. Scott's non-*Blakes* claims—meaning claims pertaining to work that did *not* consist of guarding job sites during lunch, travelling between job sites during lunch, or completing timesheets after the end of a shift—are dismissed with prejudice to the extent they are based on work performed before February 28, 2011.

March 10, 2016

United States District Judge

15